## CIRCUIT COURT OF THE CITY OF PORTSMOUTH

James Hudson, Jr.

v.

Stevedoring Co., Inc., et al.

November 12, 2003

Case No. (Law) 02-3529

BY JUDGE DEAN W. SWORD, JR.

This matter is before the Court on the motion of the defendants seeking dismissal of this action on the premise that it is barred by the Virginia Workers' Compensation Act, Virginia Code § 65.2-100, et seq.

*Facts*

Pursuant to agreement of counsel, the parties have presented the Court with a stipulation of facts and two exhibits (marked 1 and 2), as well as several responses to request for admissions, which have been read into the record, to be considered by the Court as evidence in ruling upon the motion.

This case is a law action filed by the plaintiff seeking recovery for personal injuries incurred while working as a longshoreman at Norfolk International Terminals ("NIT"). It is stipulated that the plaintiff was an employee of Universal Maritime Services ("Universal") and engaged in his occupation at the time of his injury. The defendant Jarrett was also a longshoreman engaged in his occupation, but was an employee of Cooper T. Smith Stevedoring Company, Inc. ("Cooper"). The motion for judgment alleges negligence on the part of Jarrett and liability flowing to Cooper pursuant to traditional agency theory.

The motion for judgment (paragraph 6) alleges the negligent operation of certain equipment that, for our purposes, may be treated as a motor vehicle. This collision occurred while Hudson and Jarrett were both engaged in the

loading or unloading of a ship and a barge, each belonging to an unrelated shipowner.

It is further stipulated that the accident happened on land and therefore becomes subject to both the Virginia Workers' Compensation Act and the Longshoreman and Harbor Workers' Compensation Act (33 U.S.C. § 901 et seq.). The plaintiff in this case has elected to receive benefits under the Federal Act, which does not preclude this suit.

We shall now examine the various relationships between Universal, Cooper, and VIT.

Exhibit 2 is the affidavit of Richard N. Knapp, Assistant General Manager of Virginia International Terminals, Inc. ("VIT"). This affidavit establishes that VIT is a non-profit Virginia Corporation that is controlled by the Virginia Port Authority ("VPA") which is a corporate body created by the Commonwealth of Virginia. (See Knapp A; p. 1.) VIT is the operator of three Marine Terminals in Hampton Roads, one of which is NIT. The various terminals, including NIT, are owned by VPA. The operation of NIT by VIT is controlled by a service agreement. (Knapp A; Affidavit p. 2.) On July 5, 2001, the date of the accident, the above described arrangement was in place.

As a part of the terminal operation, VIT had entered into contracts with several stevedoring companies including Universal and Cooper to provide labor pursuant to agreements with the International Longshoreman Association ("ILA"). VIT also employs certain ILA members to perform various duties similar to those provided through the stevedoring companies. The arrangements with Universal and Cooper were governed by a Schedule of Rates. (Knapp B; Affidavit p. 3.) Generally, the loading or unloading of a vessel involves persons employed by VIT and one of the stevedoring companies. (Affidavit p. 4.) Of particular interest is that VIT employees operate the cranes, while the other work is performed by the employees of the stevedoring company. (Affidavit p. 5.)

All of these various functions, as well as the right of the stevedoring companies to operate at NIT, are governed by the Schedule of Rates.

The Service Agreement (Knapp A) between VPA and VIT "engages VIT to manage, operate, and conduct the business of the public terminals of VPA." (P. 1, Article I, Sec. 1.1.) In large measure, this agreement leaves the practical management of the various terminals to VIT, subject to certain policies established by VPA.

The actual operation of the terminal is governed by the Schedule of Rates. (Knapp B, Affidavit p. 3.)

Several provisions of the Schedule of Rates are of interest:

(a) 204 VIT reserves the absolute right to the use of the facilities it operates, and permission for the use thereof must be obtained from VIT;

(b) 206 Use of the pier ... and other facilities under the jurisdiction of VIT shall constitute consent to the terms and condition of this schedule of rates. . . .

(c) 208 VIT reserves the rights to control and perform the loading, unloading, handling ... of all freight and cargo on premises and facilities under its control.

The balance of the Schedule of Rates provides for the various services offered at the terminal which include the handling of various types of cargo and cargo containers and other services provided to shippers by VIT. (See Sections III, IV, V, VI, and VIII.) Clearly, under the provisions of this document, VIT has the ultimate control over all of the activities on NIT.

Exhibit one is the affidavit of Irvin Privott, the Regional Director of Loss Control for Cooper. Cooper operates at NIT pursuant to license agreement with VIT to provide labor at NIT pursuant to the Schedule of Rates. (Affidavit p. 2.) His evidence further reflects that VIT employees operate the cranes used in loading and unloading as well as certain other equipment used to handle cargo at NIT. (Affidavit p. 3.) Universal also had a similar license. (Affidavit p. 5.)

## Issue

There are two questions the Court must answer to resolve the motion:

(1) Does the Virginia Workers' Compensation Act apply to this case and

(2) Do the agreements between Cooper, Universal, and VIT create the relationship of statutory employees as contemplated by Virginia Code § 65.2-302 and therefore limit the plaintiff's remedy to a recovery under Workers' Compensation.

## Does Virginia Workers' Compensation Apply

This question really should be does the provision of Virginia Code § 65.2-302 et seq. apply when the Claimant has made a claim for Federal Workers' Compensation, but has not yet received any benefits through the Virginia statute.

We have for our consideration the case of *McBride v. Metric Constructors, Inc.*, 239 Va. 138 (1990). In McBride this exact issue was presented to the Virginia Supreme Court: "we decide whether a worker injured in Virginia, covered by both acts, but compensated under the Federal

Act, can maintain a common law negligence action against a party who is immune from such actions under the state act but not the federal act." (239 Va. at 139.)

The Court opined:

> Under Virginia tort law, it makes no difference that McBride made no claim under the state act. Code § 65.1-23 (now § 65.2-300) binds McBride to all provisions of the State Act. . . .

(239 Va. at 141.)

The Court went on to find that McBride was a statutory employee and his action had been properly dismissed by the trial court.

This decision then brings us to the gravamen of our case: Is there a statutory employee relationship between the plaintiff and the defendants?

### Statutory Employees

Virginia Code § 65.2-302 (a) provides inter alia:

> When any person ... undertakes to perform or execute any work which is a part of his trade, business, or occupation and contracts with any other person ... for the execution or performance ... of the whole or part of the work undertaken by such owner, the owner shall be liable to pay ... any compensation ... he would have been liable to pay if the worker had been immediately employed by him.

Sections (B) and (C) of this Code Section take the liability even deeper to include the employees of sub-sub contractors.

Counsel cites numerous cases affirming the concept of "statutory employees," but the real issue before this Court is a factual one: do Cooper and Universal perform work pursuant to an agreement with VIT that is a part of the trade, business, or occupation of VIT.

The documents filed as evidence for the purpose of this motion and previously identified as Knapp A and Knapp B provide the answer to this question. VIT is an independent contractor employed by VPA "to manage, operate, and conduct the business of the public terminals of VPA." (Knapp A, p. 1.)

As a part of the process, VIT has prepared and published a Schedule of Rates (Knapp B) which governs all phases of the operation of the several terminals, including NIT. While this document is lengthy, a complete reading shows that VIT is responsible for every phase of the operation from receiving cargo shipped by land or water, to docking and maintaining control over

vessels that call at its piers, loading and unloading cargo, storing cargo and cargo containers, as well a number of other functions disclosed in the exhibit. The language of the exhibit also leads to the conclusion that VIT can subcontract various functions, but retains operational control at all times. (See Sections 204 and 208, *supra*.) Clearly the principal function (trade or business) of VIT is to move cargo from shore to ship or ship to shore.

The affidavit of Irvin Privott establishes that both Cooper and Universal were operating as contractors to provide labor to load and unload vessels at NIT. This process also required the employees of Cooper and Universal to work in concert with the employees of VIT to accomplish the loading and unloading of cargo. (Paragraphs 2, 3, 4, 5, and 7.)

There is no doubt based upon the evidence before this Court that VIT stands in the position of a general contractor as contemplated by Code § 65.2-302(A). It is also clear that the various stevedoring companies including Cooper and Universal are subcontractors who engage in the execution or performance of the trade or business of VIT.

(This conclusion would be reinforced by a slightly different factual hypothesis: suppose the plaintiff had been injured by a VIT employee operating one of its pieces of equipment during the loading or unloading of cargo. No serious argument could be made as to the relationship of the parties as to Workers' Compensation Act liability and this Court sees little distinction between our case and the hypothetical.)

### Conclusion

Virginia Code § 65.2-307 provides:

The rights and remedies herein granted to an employee...to accept compensation on account of injury ... shall exclude all other rights and remedies of such employee. . . .

Having found that the plaintiff is a statutory employee of VIT and that the defendant Jarrett is also a statutory employee of VIT, the Court grants the motion of the defendant Jarrett to dismiss this action.

Finding also that any liability of Cooper would by necessity flow from the negligence of Jarrett, the Court also grants the motion of Cooper to dismiss the action. Counsel shall prepare an Order dismissing this matter with prejudice to the rights of the plaintiff to maintain a common law negligence action.